ELECTRONIC
June 5, 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISRICT COURT
for the SOUTHERN DISTRICT OF FLORIDA
Palm Beach

| | |
|---|---|
| JIMMY OLIVER ) | Crim. Case No. 2:06-CR-80023 |
| Petitioner, ) | 28 U.S.C. § 2255 |
| vs. ) | 09-80845-Civ-RYSKAMP/WHITE |
| UNITED STATES OF AMERICA, ) | |
| Respondent. ) | |

### DECLARATION OF JIMMY OLIVER

I, Jimmy Oliver, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct. I am prepared to appear before the Court and testify as follows:

1. My name is Jimmy Oliver and I am the named defendant in the above captioned case.

2. On January 19, 2006, I was arrested in West Palm Beach, Florida, by the federal authorities. I was charged with two counts of exploitation of a minor, and one count of Interstate Commerce violation. The warrant issued from Billings Montana.

3. Assistant Federal Public Defender Robin Rosen-Evan was appointed to the case. She represented me through the case.

4. Counsel visited me and advised that the government was offering a plea agreement. she said it was too early in the case to make any plea agreement.

5. The Montana case was transferred to Florida. On February 2006, a superceding indictment was issued by the West Palm Beach federal grand jury listing 21 counts of the same nature

as the Montana case.

6. In April 2006 a federal agent named "Bleckly" [Bleckickt, 5-26-09] (phonetic) visited me. He worked for Immigration and Customs Enforcement (ICE). The agent questioned me. My attorney was not present. I protested about his visit without my counsel being present. The agent said that "If I helped him, he would help me later." I agreed to help and answered his questions. My attorney failed to assist me in pursuing a timely agreement to enter a guilty [Bleckickt, 5-26-09] plea once I affirmatively began to cooperate with agent Bleckly.

7. Attorney Rosen-Evan visited me at FDC Miami. I had suffered a stroke during May 2006, had been treated, and advised counsel I wanted to enter a guilty plea.

8. Counsel Rosen-Evan visited me at FDC Miami. She told me she spoke with AUSA Marie Villfana. AUSA Villafana told my attorney that Villafana was advised by one of my family members that I wanted to enter a guilty plea in exchange for a "life sentence." While my family member did contact and speak with the AUSA, any communication during that contact to the effect that I wanted to accept a life sentence in exchange for a guilty plea was incorrect--I explained this to attorney Rosen-Evan.

9. Because my lawyer, Ms. Rosen-Evan, consistently advised me that a guilty plea agreement was not available following the issuance of the first superceding indictment, I did ask my family members to contact AUSA Villafana and express that I was willing to ⟨meet with them⟩ [5-26-09]. I asked the family member to express that I wanted to meet with the AUSA and discuss a plea. My attorney met with me, she was angry about my family contact with the AUSA,

-2-

she advised me that the AUSA wanted me to receive a life sentence, and she advised that no plea agreement was available. We did not meet with the AUSA together.

10. In October 2006 a second superceding indictment listing 19 counts issued (10/26/06). I had repeatedly asked my lawyer to take me before the Court "to get this over with." I wanted to plead guilty. there was no reason for the delay between May 2006 and October 2006.

11. A jury trial was set for November 6, 2006. I was not advised that a guilty plea was available. My lawyer repeatedly advised me that the government's case was strong because of the information provided by an informant in Montana. My lawyer advised me that we would proceed to trial.

12. During a November 2, 2006, pretrial hearing the district court judge, Honorable K. L. Ryskamp, stated the Court had received a PSI report from the probation department indicating that I did not have a criminal history conviction record. The Court aksed AUSA Villafana and my lawyer, Ms. Rosen-Evan, "Why isn't there a plea offer in this case--in light of no prior criminal history?" My lawyer stated 1) the government had made no offer since the first superceding indictment, 2) that she, my attorney, had concerns about the Court running the sentences consecutive, and 3) that she wanted to make sure she was clear on the counts. The Court said it did not run sentences consecutive on this sort of thing.

13. Directly following the November 2, 2006, hearing, I was tranported to the medical ward in West Palm Beach. The public defender's investigator assigned to my case arrived to speak with me. He, Mr. Notario, briefed me on what to expect at trial. I told Mr. Notario I insisted on pleading guilty to avoid a life sentence. Notario left and returned two hours later accompanied by my attroney, Ms. Rosen-Evans.

14. On November 2, 2006, Ms. Rosen-Evan advised me that I could choose between three written plea offers. She had all three offers with her, as follows: 1) Plea offer one was to enter an open plea to all 19 counts of the indictment; 2) plea offer two involved a guilty plea for certain counts and a stipulated ageement that the sentence would be no less and no more than 264 months imprisonment; 3) plea offer three involved enter a cooperation agreement, pleading guilty to counts 6,9,12,15 and 19 of the second superceding indictment, a substantial assistance clause (5K1 and Rule 35) was built in, and a waiver of appeal.

15. In regard to the three plea offers, counsel advised me as follows: 1) she said plea offer one was "out of the question," and not to be considered; 2) she said plea number two involved "too much time for a person with my health condition and age;" 3) she advised that I "should accept plea offer number three, because she was aware that I had information which would (a) qualify me for a 5K1.1 sentence reduction, and (b) result in a sentence of less than 264 months. Counsel did not discuss with me the factual basis of any information I would provide the government pursuant to the number three agreement.

-4-

16. On Novemebr 3, 2006, I appeared in court and entered a change of plea to guilty pursuant to plea agreement number three. The Court said during the plea hearing that it was a possibility that I might receive 130 years if it were to sentence me to consecutive sentences, but that generally, the Court did not do that sort of thing. The Court said that with the 5K1.1 and Rule 35 being involved, that I "would be okay with the plea." The Court was not advised regarding the specifics of the other two plea offers.

17. Based on discussion with my lawyer before entering the guilty plea, I was led to believe by counsel that my sentence would be less than 264 months by entering into the plea offered in agreement number three (as described in the foregoing ¶14).

18. Counsel did not to my knowledge consult with the AUSA and make any determination, from the perspective of the AUSA, whether I had information the AUSA would consider information which would qualify me for a 5K1.1 and a lesser sentence than 264 months.

19. Prior to Allowing me to accept the cooperation agreement, my lawyer had repeatedly told me the AUSA, Ms. Villafina, wanted to give me a life sentence--wanted me to receive a life sentence and for that reason no plea agreement was available. When my lawyer allowed me to accept the cooperation agreement, I reasonably believed, based on her discussions with me, that she had worked out the plea agreement with the AUSA and it was understood that I would benefit from a government motion pursuant to 5K1.1 based upon information reviewed by my lawyer and the AUSA prior to

-5-

my lawyer presenting the offer to me.

20. My lawyer advised me that my sentencing guideline would call for a life sentence without parole if I entered the open plea that was offered (plea agreement one *ibid* at ¶14).

5-26-06. JD

Had I chosen the plea offerred in plea agreement two my offense level would have been 32, criminal history category I, with a sentencing range of 121 to 151 months, **and if this Court had departed upward or run my sentences consecutive I could have appealed and likely would have won the appeal.**

21. On or about November 9, 2006, the federal probation officer met with me at the medical ward in county jail. The purpose of the visit was for the probation officer to gather information for the PSI report.

22. The PSI report ultimately recommended that all counts I pled guilty to be grouped, the offense level to be 32, criminal history to be category I, with a sentencing range of 121 to 151 months.

23. The following week AUSA Villafana and agents from ICE interviewed me. I informed them regarding my involvement in the case. My lawyer was present. She failed to consult with me or provide me any advice on this important matter.

24. AUSA Villafana refused to motion the Court pursuant to 5K1.1 on my behalf.

-6-

25. The Court sentenced me on November 19, 2006. For the first time since I entered the guilty plea, I saw my lawyer. She apparently knew the AUSA was refusing to file a 5K1.1 motion on my behalf. My lawyer made no effort to try to set up another interview between myself and the AUSA and ICE agents for compliance with 5K1.1.

26. As it turns out, to this day, I do not know what information I could have provided to AUSA Villafana and ICE which would have warranted the 5K1.1 motion my lawyer advised me I qualified for under her advice that I accept plea agreement number three.

27. During the sentencing hearing, AUSA Villafana, argued for me to receive a life sentence, the same sentence she had told my lawyer the AUSA wanted me to receive throughout the case prior to the 11th hour entry of a guilty plea.

28. The Court refused to allow me any reduction for a timely plea despite my lawyer's statement that she was responsible for repeatedly convincing me to refuse to enter a guilty plea earlier in the case.

29. Ultimately this Court punished me severly based upon the finding that I had failed to provide substantial assistance. I was sentenced to serve "life or 1560 months." At most, I should only have been sentenced to serve the 22 years (264 months) that would have resulted from guilty plea offer number two (see ibid at ¶14). Had my lawyer shown the Court the other two agreements, I believe it would have at most sentenced me to 22 years. My whole reason for choosing the guilty plea was to avoid a life sentence. My lawyers failures to properly represent me during the plea compliance stage of the guilty plea, and during the

-7-

time when we made the decision which plea to accept resulted in the Court sentencing me to the equivalent of life without parole. I was offered a guilty plea with a maximum stipulated sentence of 264 months. I refused that guilty plea offer based upon professionally deficient advice by my lawyer.

30. When I met with AUSA Villafna, the ICE agent, and my lawyer, the AUSA and the agent asked me numerous questions. I answered all of their questions. There is absolutely no information that I failed to share with the AUSA and ICE agent that I had otherwise provided to my lawyer. In other words, my lawyer's statement to me that I "should accept the cooperation agreement because [she knew I] had information that would qualify me for a reduced sentence under Rule 35 or § 5K1.1 ." My lawyer obviously failed to question AUSA Villafana about the nature of the information the AUSA wanted from me. My lawyer misled me to believe that I would be required to tell the AUSA about my personal involvement in the case. She led me to beleive my sentence would be less than 264 months. she led me to believe the guilty plea I chose was the best case senario based upon her understanding of the case.

31. But for my lawyers failure to investigate the necessary facts and confirm that I indeed possessed information of the type and substance that the AUSA needed in this case, I would never have entered the guilty plea I entered in to. For example, the AUSA asked me about people I've never heard of or met. Those

people, if I understood the questions by the AUSA, were people that were connected to a ~~informant~~ [informant 5-26-09] in Montana. Those people lived in states other than Montana. 5-26-09 JC

The person who informed against me, and that was it. I was not a part of the larger distribution network. I never misled my lawyer to believe otherwise. However, she unprofessionally assumed without asking me to confirm it, that I knew information which the AUSA in this case would consider "substantial assistance." She did this despite her knowledge of the high threshold for meeting that information category, and despite her knowledge that the AUSA had repeatedly refused **any** plea discussions prior to the Court's intervening action suggesting a plea may be appropriate. The Court was harsh against me because it was misled to believe I have refused to give information. That is not the truth. I simply didn't have any information of value to the AUSA.

31. Would it make sense for me to refuse a 264 month guilty plea in favor of a plea where I was told I could get up to 130 years except for my cooperation if I planned to NOT cooperate? Isn't it obvious there is a miscommunication in the case?? That would be between myself and my lawyer. I was misinformed as to what constituted "substantial assistance."

09-80845-Civ-RYSKAMP/WHITE Document 2   Entered on FLSD Docket 06/05/2009   Page 10 of 10   D.C.
ELECTRONIC
June 5, 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

32. I repeatedly insisted on a *plea deal* because my *5-26-09 J.O.* repeatedly informed me that I was going to get a life sentence if I *went to trial*. That was not professionally competent advice. I cooperated early with the ICE agents. My lawyer intervened and put a stop to that. She admitted to this Court that it was her fault I had not entered a guilty plea early in the case. I've looked at the PSI report, and even if I had *plead* ~~pled~~ *5-26-09 J.O.* guilty to *two counts* early in the case I would not have been sentenced to life. The guideline only goes up to 3*2*, level *one* for my case. I would have gotten it lower for acceptance of responsibility and entering an early plea absent my lawyers persistent interference and insisting on a jury trial. *5-26-09 J.O.*

*I* may have been able to enter a plea and get no more than *264* months **and kept the right to appeal.**

END

                                           Entered on this *26* day of June, 2009

                                           */s/ Jimmy Oliver*
                                           Jimmy Oliver
                                           75468-004
                                           FCI Jesup
                                           2680 Hwy 301 South
                                           Jesup, Georgia 31599